

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Melissa A. Dunworth,

    Plaintiff,

v.                                                              19-cv-2 (JLS)

Commissioner of Social Security,

    Defendant.

---

## DECISION AND ORDER

Plaintiff Melissa A. Dunworth brings this action under the Social Security Act, seeking review of a determination by the Commissioner of Social Security (the "Commissioner") that she was not disabled. Dkt. 1. Dunworth moved for judgment on the pleadings. Dkt. 14. The Commissioner responded and cross-moved for judgment on the pleadings. Dkt. 15. Dunworth replied. Dkt. 18.

For the below reasons, this Court grants Dunworth's motion and denies the Commissioner's cross-motion.

## PROCEDURAL HISTORY

On January 8, 2015, Dunworth applied under Title XVI for social security income. Dkt. 1-1, at 5.[1] She originally alleged she had been disabled since October 14, 2000, but later changed the disability onset date to January 8, 2015. *Id*.

---

[1] The same day, she applied under Title II for disability and disability insurance benefits, which she later voluntarily withdrew. *Id*. The Court addresses only Dunworth's Title XVI application.

The Commissioner denied Dunworth's application on April 27, 2015. *Id.* On May 1, 2015, she requested a hearing before an administrative law judge ("ALJ"). *Id.* The ALJ held a hearing on August 22, 2017, and issued an unfavorable decision on October 3, 2017, finding that Dunworth was not disabled under Sections 216(i), 223(a), and 1614(a)(3)(A) of the Social Security Act. *See* Dkt. 1-1, at 5, 16. Dunworth appealed the ALJ's decision on December 7, 2017, and the Appeals Council denied her request for review on October 31, 2018. *See id.* at 6; Dkt. 1-2, at 2, 6. She commenced this action on December 31, 2018. Dkt. 1.

## LEGAL STANDARDS

### I. District Court Review

The scope of review of a disability determination involves two levels of inquiry. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the Court must "decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* The Court's review for legal error ensures "the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes" of the Social Security Act. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Second, the Court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citation omitted). The Court does not "determine *de novo* whether [the

2

claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotations and citation omitted). But "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Indeed, if there is "a reasonable basis for doubt whether the ALJ applied correct legal principles," applying the substantial evidence standard to uphold a finding that the claimant was not disabled "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## II. Disability Determination

ALJs follow a five-step evaluation process to determine if a claimant is disabled. *See* 20 C.F.R. § 416.920(a)(2). At the first step, the ALJ determines whether the claimant currently is engaged in substantial gainful employment. *Id.* § 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. *Id.* § 416.920(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe impairments. *Id.* § 416.920(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. *Id.* § 416.920(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* § 416.920(a)(4)(iii). If the claimant's severe impairment or

combination of impairments meets or equals an impairment listed in the regulations and meets the duration requirement, the claimant is disabled. *Id.* § 416.920(a)(4)(iii).

But if the ALJ finds that no severe impairment or combination of impairments meets or equals an impairment in the regulations, the ALJ proceeds to calculate the claimant's residual functional capacity ("RFC"). *Id.* § 416.920(a)(4)(iv); *id.* §§ 416.920(d)-(e). The RFC is a holistic assessment that addresses the claimant's medical impairments—both severe and non-severe—and evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for her collective impairments. *See id.* § 416.945.

The ALJ then proceeds to step four and determines, using the claimant's RFC, whether the claimant can perform past relevant work. *Id.* § 416.920(e). If the claimant can perform past relevant work, she is not disabled, and the analysis ends. *Id.* § 416.920(f). But if the claimant cannot perform past relevant work, the ALJ proceeds to step five. *Id.* § 416.920(a)(4)(iv); *id.* § 416.920(f).

In the fifth and final step, the Commissioner must present evidence showing the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See id.* §§ 416.920(a)(4)(v), (g); *Bowen v. Yuckert*, 482 U.S 137, 146 n.5 (1987); 20 C.F.R. §§ 404.1520(a)(4)(v), (g). Specifically, the Commissioner must prove the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in

the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotations and citation omitted).

## DISCUSSION

Applying the five-step evaluation, the ALJ first found that Dunworth had not engaged in substantial gainful activity since January 8, 2015, the alleged onset date. *See* Dkt. 1-1, at 8. At step two, the ALJ found that Dunworth had several severe impairments, including: polyarthralgia; obesity; asthma; history of deep vein thrombosis and bilateral pulmonary emboli; bipolar disorder; and anxiety disorder. *See id.* The ALJ found that fibromyalgia was a non-medically determinable impairment. *See id.* He then found that Dunworth did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in the regulations at step three. *See id.* at 9. Instead, he found "mild" or "moderate" limitations. *Id.*

At step four, after considering "all symptoms and the extent to which th[o]se symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," the ALJ found that Dunworth has the residual functional capacity to perform:

> Full range of light work . . . . More specifically, [Dunworth] can lift and/or carry up to 10 pounds frequently and up to 20 pounds on occasion, push and/or pull up to 10 pounds frequently, sit for up to six hours in an eight-hour workday, and stand and/or walk for up to six hours in an eight-hour workday. [She] can occasionally kneel, crouch, crawl, push, pull, bend, and climb stairs and ramps, but can never climb ladders, ropes, or scaffolds. Also, she cannot work around unprotected heights or moving mechanical parts or be exposed to the extreme heat, cold, wetness, or humidity. Additionally, [Dunworth] must avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, and

5

>other respiratory irritants. Psychiatrically, [she] is able to work in a low stress work environment. This is reflected by the ability to understand, remember and carry out simple instructions and tasks, have no supervisory duties, no independent decision-making, no strict production quotas, and minimal changes in work routine and processes. Finally, [Dunworth] is capable of frequent interaction with supervisors, co-workers, and the general public.

*Id.* at 10. The ALJ also found that Dunworth could not perform past relevant work. *Id.* at 15. At the fifth and final step, the ALJ concluded that jobs Dunworth can perform exist in significant numbers in the national economy, considering her age, education, work experience, and residual functional capacity. *Id.* at 15.

Dunworth raises two challenges to the Commissioner's decision: (1) the ALJ failed to evaluate her fibromyalgia properly under Social Security Ruling 12-2p ("SSR 12-12p"), and his error was not harmless; and (2) the Appeals Council failed to consider properly the treating opinion evidence submitted for its review. *See* Dkt. 14, at 11.

I. **The ALJ Failed to Evaluate Properly Dunworth's Fibromyalgia.**

Dunworth claims that the ALJ did not properly evaluate whether her fibromyalgia was a medically determinable impairment at step two. *See* Dkt. 1-1, at 11.

"When the parties disagree over the effect of the ALJ's failure to include a condition at step two, resolution of this issue comes down to a question of whether there was substantial evidence to support the ALJ's conclusion that the omitted condition should not be included as a severe impairment." *Casselbury v. Colvin*, 90 F. Supp. 3d 81, 93 (W.D.N.Y. 2015) (quoting *Eralte v. Colvin*, No. 14 Civ. 1745(JCF),

6

2014 WL 7330441, at *10 (S.D.N.Y. Dec. 23, 2014)). Fibromyalgia is determined through exclusion, and fibromyalgia patients often have physical examinations that yield "normal" results. *See Lisa v. Sec. of Dep't of Health & Human Servs.*, 940 F.2d 40, 44-45 (2d Cir. 1991) (quoting *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817-18 (6th Cir. 1988)). The Second Circuit, among other courts, recognizes that "fibromyalgia is a disabling impairment and that 'there are no objective tests which can conclusively confirm the disease.'" *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (quoting *Preston*, 854 F.2d at 818).

To address this issue, the Commissioner developed SSR 12-2p to provide guidelines for the evidence required to establish fibromyalgia as a medically determinable impairment. *See* SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). Fibromyalgia is a medically determinable impairment if: (1) the physician diagnosed fibromyalgia; (2) the physician provided the evidence required in Section II.A. (1990 American College of Rheumatology Criteria) or Section II.B (2010 Preliminary Diagnostic Criteria); and (3) the physician's diagnosis is not inconsistent with the other evidence in the person's case record. *See id.*

Here, the ALJ did not properly evaluate—or, at a minimum, did not properly support his evaluation of—Dunworth's fibromyalgia. The ALJ mentions SSR 12-2p, but his analysis consists of one sentence: "As it pertained to rheumatoid arthritis and fibromyalgia, there is no assessment that is consistent with SSR 12-2p." *See Durodoye v. Comm'r of Soc. Sec.*, No. 6:16-CV-1457 (CFH), 2018 WL 1444212, at *6 (N.D.N.Y. Mar. 20, 2018); Dkt. 1-1, at 8. The ALJ did not cite any criteria and did

7

not explain his conclusion regarding Dunworth's fibromyalgia. *See* Dkt. 1-1, at 8-9. Rather, he provided a brief discussion of Dunworth's diagnosis and various objective tests, which appeared "unremarkable" or "normal." *See id.* The ALJ concluded that Dunworth's fibromyalgia was not a medically determinable impairment based on a lack of objective findings, and did not consider the non-objective methods for assessing fibromyalgia set forth in SSR 12-2p.

The Court next must consider whether the ALJ's error at step two was harmless. Dunworth argues that "because the ALJ concluded that [her] fibromyalgia is not a medically determinable impairment, [he] had no basis to credit [her] statements regarding her fibromyalgia-related symptoms in the remainder of [his] decision." *See* Dkt. 14, at 15 (quoting *Cooper v. Comm'r of Soc. Sec.*, No. 17-CV-1058-MJR, 2019 WL 1109573, at *5 (W.D.N.Y. Mar. 11, 2019)). The Commissioner argues that the ALJ considered all of the medical record evidence regarding symptoms attributed to polyarthralgia, which closely resemble the symptoms of fibromyalgia, as required by 20 C.F.R. §§ 404.1529 and 416.929. *See* Dkt. 1-1, at 10; *see also* Dkt. 15-1, at 8-10.

The harmless error doctrine requires "a reviewing court [to] reverse and remand when an [ALJ] errs when reaching a decision, unless, as a matter of law, the result could not be affected by the error." *Showers v. Colvin*, No. 3:13-cv-1147 (GLS/ESH), 2015 WL 1483819, at *8 (N.D.N.Y. Mar. 25, 2015). Failure to include a condition as a severe impairment "is harmless if the ALJ proceeded through the sequential analysis taking the plaintiff's complaints of pain into account when

making his RFC determination." *Casselbury*, 90 F. Supp. 3d at 94. But when the ALJ's error stems from his decision that an impairment is not medically determinable, the "step two harmless doctrine is inapplicable." *Keller v. Colvin*, No. 16-CV-6399P, 2017 WL 4112024, at *14 (W.D.N.Y. Sept. 18, 2017). In other words, the step two harmless error doctrine applies only to ALJ decisions regarding whether an impairment is severe, and not to decisions regarding whether the impairment is medically determinable. *See Showers*, 2015 WL 1483819, at *8.

Here, the ALJ's incomplete analysis of Dunworth's fibromyalgia at step two could have affected his RFC analysis. The relevant issue was whether Dunworth's fibromyalgia was a medically determinable impairment—not whether her fibromyalgia was a severe impairment—so the harmless doctrine does not apply.[2] *See id.* Because he determined that Dunworth's fibromyalgia was not a medically determinable impairment, the ALJ should not have considered the symptoms relating to her fibromyalgia when he calculated her RFC. *See id.* Even if the ALJ considered similar symptoms when calculating Dunworth's RFC, "remand is necessary for the ALJ to properly evaluate [Dunworth]'s fibromyalgia at step two and the remaining steps of the sequential evaluation process." *See Keller*, 2017 WL 4112024, at *14.

---

[2] This distinction matters because, "when functional effects of impairments erroneously determined to be nonsevere at step [two] are fully considered and factored into subsequent residual functional capacity assessments, the step [two] error effectively is cured." *Showers*, 2015 WL 1483819, at *8. That cure did not occur here.

9

## II. The Appeals Council Did Not Fail to Consider Treating Opinion Evidence Submitted for Its Review.

Dunworth argues that the Appeals Council failed to consider treating opinion evidence submitted for its review. *See* Dkt. 14, at 16.

The "treating physician rule" requires the Appeals Council to consider additional evidence from a claimant if the evidence is: (1) new; (2) material; (3) relates to the period on or before the ALJ's decision; and (4) would, with reasonable probability, change the outcome of the decision. *See Brown v. Comm'r of Soc. Sec.*, No. 17-CV-1107P, 2019 WL 2441862, at *2 (W.D.N.Y. June 12, 2019). Evidence is "new" if "it has not been considered previously in the administrative process." *Id.* Evidence is "material" when "it is relevant to the claimant's condition during the time period for which benefits were denied and probative, meaning there is a reasonable probability that it would have influenced the Commissioner to decide the claimant's application differently." *Id.*

Generally, the Appeals Council gives more weight to medical opinions from the claimant's treating sources because those sources likely have the most knowledge about the claimant's medical history. *See* 20 C.F.R. § 416.927(c)(2). Medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). But "a statement by a medical source that

10

[the claimant is] 'disabled' or 'unable to work' does not mean that [the Appeals Council] will determine [the claimant is] disabled." *Id.* § 416.927(d)(1).

Here, the Appeals Council did not err by declining to review opinion evidence from Dr. Smith. The evidence was new because Dr. Smith's examination was not "considered previously in the administrative process." *See Brown*, 2019 WL 2441862, at *2. The evidence was not, however, material. Dr. Smith's examination was "relevant to [Dunworth]'s condition during the time period for which benefits were denied and probative" because it pertained to her fibromyalgia around the period for which the ALJ rendered an unfavorable decision. *See id.* But there is not a "reasonable probability that [the evidence] would have influenced the Commissioner to decide [Dunworth]'s application differently."

In particular, Dr. Smith completed a medical examination of Dunworth, listing her medical conditions as anxiety, depression, asthma, arthritis, and fibromyalgia. *See* Dkt. 8, at 36-37.[3] All of these conditions are documented in Dunworth's medical record and were considered by the Commissioner, ALJ, and Appeals Council. *See id.* at 80-81. Dr. Smith's note that Dunworth "is unable to work at this time" also does not have a reasonable probability of affecting the outcome because the Appeals Council—not Dunworth's treating physician—is "responsible for making the determination or decision about whether [she] meets the statutory definition of disability." 20 C.F.R. § 416.927. Finally, Dr. Smith did

---

[3] All further references to Dkt. 8 are denoted "Tr."

not describe the nature and severity of Dunworth's impairments, including fibromyalgia; he merely provided a conclusory statement. See Tr. 37.

The Appeals Council properly denied Dunworth's request that it review the evidence from Dr. Smith. Because the evidence was not material, the Appeals Council was not required to review it. See Brown, 2019 WL 2441862, at *2.

## CONCLUSION

For the reasons stated above, the Court GRANTS Dunworth's motion for judgment on the pleadings (Dkt. 14) and DENIES the Commissioner's motion for judgment on the pleadings (Dkt. 15). The Commissioner's decision is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision and order. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated:   July 30, 2020
         Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE